USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 97-1525

 UNITED STATES,

 Appellee,

 v.

 BENJAMIN PANIAGUA, A/K/A BENJI,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 Cyr, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 

 Randy Olen for appellant.
 Ariane D. Vuono, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief for appellee.

June 8, 1998

 
 

 Per Curiam. Defendant-appellant Benjamin Paniagua
appeals his convictions for possession with intent to distribute
and distribution of cocaine base, in violation of 21 U.S.C. 
841(a)(1), 841(b)(1)(B) and 18 U.S.C. 2, and possession with
intent to distribute and distribution of heroin, in violation of 21
U.S.C. 841(a)(1) and 18 U.S.C. 2. Paniagua claims that the
district court improperly refused to instruct the jury on the
affirmative defense of duress and improperly admitted evidence of
the defendant's prior bad acts. Because of these alleged errors,
Paniagua argues that he was deprived of a fair trial. After
careful review of the record, we affirm the convictions. 
 1. We review de novo the district court's refusal to
instruct the jury on a proposed duress and coercion defense,
viewing "the record 'most charitably to the proponent of the
instruction.'" See United States v. Arthurs, 73 F.3d 444, 448 (1st
Cir. 1996)(quoting United States v. Coady, 809 F.2d 119, 121 (1st
Cir. 1987)). A duress defense has three elements: (1) an immediate
threat of serious bodily injury or death, (2) a well-grounded
belief that the threat will be carried out, and (3) no reasonable
opportunity to escape or otherwise to frustrate the threat. SeeUnited States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992)(citing
cases). "A defendant is entitled to an instruction on a duress
defense only after he has produced sufficient evidence from which
a rational jury could find all of the elements of the defense." 
United States v. Sotelo, 94 F.3d 1037, 1039 (7th Cir. 1996). 
 Paniagua was convicted largely on the evidence collected
through the cooperation of a government informant named Victor
Rodriguez. Rodriguez and Paniagua were both members of "La
Familia," a Hispanic gang that operated throughout western
Massachusetts. In May 1995, Rodriguez was arrested and charged
with intent to distribute crack cocaine. After his arrest
Rodriguez agreed to work for the Western Massachusetts Gang Task
Force ("WMGTF") in an undercover capacity. 
 Rodriguez subsequently arranged two drug purchases from
Paniagua. The first, a crack cocaine purchase, took place on May
3, 1996, at Rodriguez's photography studio. Subsequently, on May
22, 1996, Rodriguez purchased heroin from Paniagua at Paniagua's
home.
 Throughout the trial, Paniagua attempted to build a
duress defense by eliciting testimony to demonstrate that Rodriguez
was a religious priest in the Santeria and Palerus religions and a
gang leader who "exerted such extraordinary power, control, and
influence over Mr. Paniagua, that Mr. Paniagua was incapable of
resisting Mr. Rodriguez's entreaties to commit the charged
offenses." Although the district court was initially concerned
that defense counsel intended to impeach Rodriguez's credibility
solely by attacking his religious beliefs, the court eventually
gave Paniagua leeway to pursue this defense. 
 Rodriguez in his testimony acknowledged his position
within the religions and described his religious activities. In
addition, he testified that gang members were sometimes violently
punished for breaking the rules of the gang, which were described
in a document called "The Book of Love." Defense counsel was
unable to elicit testimony, however, to establish that specific
threats were directed at the defendant in connection with the
offense conduct or that Rodriguez had used his position as a
religious figure to intimidate or coerce the defendant. At the
conclusion of the evidence, the district court refused to instruct
the jury on duress, finding that "there is no evidence, zero
evidence as I look at it, that there was a reasonable belief that
immediate or imminent death or serious bodily harm would follow if
Mr. Paniagua did not commit the crime." 
 We agree with the district court that the evidence was
not sufficient to warrant a specialized instruction on duress or
coercion. Neither the scant testimony concerning defendant's
generalized fear of Rodriguez's position as a religious figure nor
the testimony describing the pressure to commit crime that inures
from gang association provides an adequate evidentiary basis from
which a reasonable jury could find that Paniagua committed the
charged offense under an immediate threat of serious bodily injury
or death and had no reasonable opportunity to avoid committing it. 
See, e.g., United States v. Gaviria, 116 F.3d 1498, 1530-32 (D.C.
Cir. 1997). "[F]ear alone is not sufficient to make a prima facie
case of duress." United States v. Jennell, 749 F.2d 1302, 1305
(9th Cir. 1984). 
 2. Paniagua next objects to the admission of evidence
that implicated him in a drug deal on January 5, 1996. Paniagua
objected to this evidence on relevance grounds because he had not
been charged with committing a crime on that date. The district
court found that the evidence was relevant to rebut the defendant's
argument that he sold drugs to Rodriguez under duress. Paniagua
claims that the district court erred by allowing this evidence to
come into evidence without instructing the jury on Mr. Paniagua's
affirmative defenses. We disagree. 
 Even though the court ultimately refused to instruct the
jury on the duress defense, the district court did not abuse its
broad discretion in finding that the evidence when offered was
relevant to rebut the defense raised by the defendant during the
trial. Cf. United States v. Pratt, 913 F.3d 982, 989-90 (1st Cir.
1990). 
 3. Paniagua raises a number of other contentions but
none of these issues were properly preserved for appellate review
and thus are subject to review for "plain error" only. See United
States v. Olano, 507 U.S. 725, 734-35 (1993). After carefully
reviewing the record, we are satisfied that none of these alleged
errors raises a concern about the fundamental fairness of the
proceedings below.
 Affirmed.